# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

OTIS ANDRE GUTHRIE, )
)
    Plaintiff, )
)
v. ) Case No.: CIV-16-1148-D
)
)
CPL DANIEL T. HALL, )
BADGE 342, individually, )
and CITY OF MUSTANG, )
)
    Defendants. )

# ORDER

This matter comes before the Court on Defendants CPL Daniel T. Hall ("CPL Hall") and City of Mustang's ("Mustang") Motion for Summary Judgement [Doc. No. 37]. Plaintiff Otis Andre Guthrie ("Guthrie") has filed his Response [Doc. No. 51] and Defendants have Replied [Doc. No. 54]. [1] The matter is fully briefed and at issue.

This lawsuit arises from a traffic stop of Guthrie by CPL Hall. Guthrie received tickets for speeding and an expired tag and was arrested for driving under the influence. Guthrie alleges that CPL Hall violated his Fourth and Fourteenth Amendment rights in that: (1) CPL Hall did not have reasonable suspicion to make the traffic stop; (2) there was

---

[1] Guthrie filed a corrected Response [Doc. No. 51] subsequent to filing an incorrectly saved version [Doc. No. 49]. The originally filed version [Doc. No. 49] included the Declaration of Otis Andre Guthrie [Doc. 49-1]. Guthrie's declaration was not attached to the corrected Response [Doc. No. 51]. However, because both the Response [Doc. No. 51] and Defendants' Reply reference it, the Court accepts the declaration as if it were attached correctly.

no probable cause for the arrest; (3) CPL Hall discriminated against him based on his race; and (4) CPL Hall subjected him to malicious prosecution. Complaint [Doc. No. 1] at 7, 8, 10-13. Guthrie alleges that Mustang violated his Sixth Amendment right to a jury trial. Complaint at 13-14. Guthrie brings his claims pursuant to 42 U.S.C. § 1983. Defendant CPL Hall asserts he is entitled to judgment as a matter of law based on qualified immunity, and Defendant Mustang moves for summary judgment. The following material facts are undisputed and, along with all reasonable inferences, are viewed in the light most favorable to Guthrie.

## UNDISPUTED MATERIAL FACTS

CPL Hall observed Guthrie driving his pickup truck traveling eastbound in the area of the 2200 block of E. S.H. 152 in the City of Mustang on October 4, 2014. CPL Hall estimated Guthrie's speed as 53 mph in a 45 mph zone. When CPL Hall's RADAR indicated Guthrie's speed was 56 mph, he initiated a traffic stop. During the traffic stop, Hall noticed the smell of alcohol and observed Guthrie to have slurred speech and bloodshot, watery eyes. Based on these observations, CPL Hall asked Guthrie if he had consumed any alcohol and Guthrie answered in the affirmative.

CPL Hall then conducted various field sobriety tests. First, he administered the Horizontal Gaze Nystagmus ("HGN") test and observed Nystagmus in both eyes. Next, CPL Hall started to administer a walk and turn test but stopped when Guthrie informed him of his medical condition and vertigo. Guthrie was then asked to perform the one-leg stand test and CPL Hall determined that he did not successfully complete the test. Guthrie admits in his deposition that he did not complete the one-leg test as directed. Based on

Guthrie's admission of having consumed alcohol, the odor of alcohol, Guthrie's slurred speech and bloodshot watery eyes, and Guthrie's performance during the field sobriety tests, CPL Hall determined that Guthrie was intoxicated. CPL Hall arrested Guthrie for driving under the influence of alcohol, excessive speed, and an expired license tag.

At the time of the traffic stop, Guthrie had a passenger, Michael Eugene Young ("Young"), a white male. Guthrie indicated it would be acceptable for CPL Hall to allow Young to drive his truck from the scene. Before he was allowed to do so, Young was asked if he had consumed any alcohol and answered that he had had four beers. CPL Hall administered the HGN test and observed no Nystagmus. Based on the HGN test and the lack of strong odor of alcohol, bloodshot eyes, or slurred speech, CPL Hall determined that Young was not intoxicated and released Guthrie's vehicle to Young.

Guthrie was then transported to the Mustang City Jail, booked and offered a Intoxilyzer test which he refused to take. On October 5, 2014, Guthrie was released from the Mustang City Jail. Guthrie demanded a jury trial in the municipal court and on April 9, 2015, the Mustang Municipal Court dismissed Guthrie's case and transferred it to the Canadian County District Court for prosecution. On June 1, 2015, an Information was filed in Canadian County, Oklahoma District Court charging Guthrie with driving under the influence, speeding, and driving with an expired tag. On February 10, 2016, the charges were dismissed.

## STANDARD OF DECISION

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Universal Underwriters Ins. Co. v. Winton*, 818 F. 3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). If the movant carries the burden of demonstrating an absence of a dispute as to material fact, "the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial." *Martin v. City of Oklahoma City*, 180 F. Supp. 3d 978, 983 (W.D. Okla. 2016) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998).)

The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Although the Court views all facts in the light most favorable to the nonmoving party at the summary judgement stage, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citations omitted).

"[I]n opposing a motion for summary judgment, the non-moving party 'cannot rest on ignorance of facts, on speculation, or on suspicion.'" *Bird v. W. Valley City*, 832 F.3d

1188, 1199 (10th Cir. 2016) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257.

## DISCUSSION

Guthrie brings claims under 42 U.S.C. § 9183 based on violations of his Fourth, Sixth, and Fourteenth Amendment rights under the United States Constitution. Specifically, Guthrie alleges that CPL Hall violated his Fourth Amendment rights to freedom from unreasonable seizure, warrantless arrest without probable cause, and malicious prosecution. Complaint [Doc. No. 1] at ¶ 58, 60 and 62. He alleges violation of his Fourteenth Amendment right to equal protection of the law on the grounds that he was treated differently than his white passenger. Complaint at ¶ 60. Guthrie further alleges that Mustang violated his Sixth Amendment right to a jury trial. Complaint at ¶ 66.

## I. Qualified Immunity

The purpose of qualified immunity is "to insulate public officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is intended to "protect 'government officials performing discretionary functions' and shield[] them from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known.'" *Id.* (quoting *Harlow*, 457 U.S. at 818). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez,* 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law")).

CPL Hall asserts that he is entitled to qualified immunity as to Guthrie's Constitutional claims against him. In order to establish a §1983 claim against an individual defendant asserting a qualified immunity defense, Guthrie bears the burden of demonstrating facts that: (1) "make out a violation of a constitutional right" and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816, 172 L. Ed. 2d 565 (2009); *see Martin v. City of Oklahoma City*, 180 F. Supp. 3d 978, 986 (W.D. Okla. 2016).

The pertinent question is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Koch v. City of Del City*, CIV-07-371-D, 2010 WL 1329819, at *5 (W.D. Okla. Mar. 29, 2010), *aff'd, Koch v. City of Del City*, 660 F.3d 1228 (10th Cir. 2011) (citing *Saucier,* 533 U.S. at 201). Although the evidence is reviewed in the light most favorable to the nonmoving party, the "record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir.2001). Summary judgment based on

qualified immunity is appropriate if the law did not put the "officer on notice that his conduct would be clearly unlawful." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).

### A. Traffic Stop

The Tenth Circuit recognizes that "[a] traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009). "A reasonable suspicion analysis is based upon the 'totality of the circumstances,' and 'officers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206–07 (10th Cir. 2008) (quoting *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citations and internal quotation marks omitted in original). "[T]he likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Vondrak,* 535 F.3d at 1207. Stated more simply, "reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (quoting *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

Although Guthrie's Complaint asserts that CPL Hall lacked reasonable suspicion to initiate the traffic stop, Guthrie's Response argues only that CPL Hall violated his Fourth

and Fourteenth Amendment rights by initiating a traffic stop without probable cause.[2] [Doc. No. 51] at 16-17. CPL Hall asserts in his Motion that the traffic stop was justified because he had reasonable suspicion. CPL Hall need only demonstrate either probable cause *or* reasonable suspicion. *See Winder*, 557 F.3d 1129, 1134. The undisputed facts in this case demonstrate that CPL Hall did have reasonable suspicion of a traffic violation at the time he stopped Guthrie.

CPL Hall's sworn declaration states that he observed Guthrie's "pickup truck traveling eastbound" in the 2200 block of E. S.H. 152 and that he:

> estimated the speed of the truck to be about 53 mph in a posted 45 mph zone. I activated the RADAR unit in my patrol car which indicated the speed of the truck to be 56 mph with a clear and steady tone, which can be heard in the dash-cam video.

Declaration of Daniel T. Hall [Doc. No. 37-1] at ¶ 4. Observed speeding is a reasonable articulable suspicion to initiate a traffic stop. *Winder*, 557 F.3d at 1135 (citing *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007). Likewise, a visual estimate of speed and/or RADAR readings are sufficient to establish reasonable suspicion for a traffic stop. *U.S. v.*

---

[2] Guthrie also argues for the first time in his Response that the traffic stop for speeding was pretextual, as CPL Hall stopped him only after observing his race. Response at 16. The Complaint asserts a Fourteenth Amendment violation based on Guthrie's allegedly different treatment from that of his white passenger. Because a pretext claim related to the initial traffic stop is not raised in his Complaint, the court will not address it. However, the Court notes that the dash-cam video [Doc. No. 37-3] unequivocally demonstrates that Guthrie's race cannot be discerned from the time his vehicle is first caught on camera through the pursuit and until Guthrie is pulled over. No reasonable jury could view the video and determine that CPL Hall could identify Guthrie's race prior to pulling him over.

*Ludwig*, 641 F.3d 1243, 1247 (10ᵗʰ Circuit 2011); *U.S. v. Vercher*, 358 F.3d 1257, 1262-63 (10ᵗʰ Circuit 2011).

To refute this evidence, Guthrie simply asserts that he was not speeding and that CPL Hall cannot produce evidence of the RADAR reading.[3] Response at 16. Guthrie points to his declaration in which he attests, "I was not speeding." Declaration of Otis Andre Guthrie [Doc. No. 49-1] at ¶ 10. However, the question for purposes of the constitutionality of the traffic stop and whether CPL Hall is entitled to qualified immunity regarding that stop is not whether Guthrie was *actually* speeding but whether CPL Hall had *reasonable suspicion* that Guthrie was speeding. "An officer's reasonable mistake of fact does not a constitutional violation make." *United States v. Cunningham*, 630 Fed. Appx. 873, 876 (10th Cir. 2015).

The Tenth Circuit has observed that "reasonable suspicion may exist even if it is more likely than not that the individual is not involved in any illegality." *Mocek v. City of Albuquerque*, 813 F.3d 912, 923 (10th Cir. 2015) (citing *United States v. McHugh,* 639

---

[3] Guthrie makes much about the lack of dash-cam video evidence of the RADAR reading, stating without evidentiary support that CPL Hall's statement regarding the RADAR reading is false. Response at 6-7. CPL Hall attests in his sworn declaration that the "RADAR readings are not reflected on the dash-cam video because the City's RADAR units are not connected to the patrol cars' dash-cam recording systems." CPL Hall Declaration at ¶22. Guthrie presents no evidence to refute this. Instead, Guthrie simply asserts that CPL Hall's statement is untrue. Response at 7. Guthrie has had ample opportunity to conduct discovery as to the RADAR unit but instead relies on his own unsupported assertions that the L-3 Mobile-Vision Inc., system in CPL Hall's patrol vehicle "records the dash cam, radar information, speed and other information." Guthrie Declaration at ¶12.

F.3d 1250, 1256 (10th Cir.2011) (internal quotation marks omitted in original). As noted in *Winder*, "[p]olice errors, in this context, are simply unavoidable, as reasonable suspicion involves 'probabilities' rather than 'hard certainties.'" *Winder*, 557 F.3d at 1134 (citing *Cortez*, 449 U.S. at 418, 101 S.Ct. 690); *see also*, *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir.2007) ("Law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.").[4]

The burden is on Guthrie to present sufficient evidence to demonstrate CPL Hall did not have reasonable suspicion for the traffic stop and, therefore, violated his Fourth Amendment rights by stopping him. Guthrie has failed to meet his burden. CPL Hall is entitled to qualified immunity as to Guthrie's Fourth Amendment claims arising from the initial traffic stop for speeding.

### B. Sobriety Tests

CPL Hall asserts qualified immunity in connection with the sobriety tests he conducted on Guthrie. Defendants are correct in noting that despite CPL Hall's reasonable suspicion justifying the traffic stop for speeding, reasonable suspicion is likewise required to justify the sobriety tests. As with the traffic stop for speeding, Guthrie bears the burden of demonstrating there is insufficient evidence that CPL Hall had reasonable suspicion of intoxication to justify the field sobriety tests. In opposition to CPL Hall's assertion of

---

[4] The Court notes that Guthrie admits in his deposition that he does not know how fast he was driving. Guthrie Deposition at 141, lns 22-23. In *Wilson*, 66 Fed.Appx. at 795, n.5, the Tenth Circuit acknowledged that "less than definitive knowledge [that] [does] not cast sufficient doubt on what the officer reasonably believed at the time," may be insufficient to avoid summary judgment in favor of the defendants.

qualified immunity, Guthrie admits he "had half a beer that afternoon" and simply argues without evidentiary support that CPL Hall could not have smelled alcohol on his breath. Response at 19; Gurthrie Declaration at ¶ 22.

The Tenth Circuit held in *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008), that a police officer was entitled to qualified immunity in conducting field sobriety tests where the only factual basis for the officer conducting the tests was a plaintiff's "statement that he 'had one beer three hours ago.'" As in *Vondrak*, it is undisputed that Guthrie admitted consuming alcohol. Doc. No. 49-1 at ¶ 22. Based on *Vondrak*, Guthrie's admission alone gave CPL Hall reasonable suspicion to conduct the sobriety tests. However, CPL Hall has presented additional uncontroverted evidence beyond Guthrie's admission. CPL Hall attests that he also smelled alcohol on Guthrie's breath during his investigation of Guthrie's alleged speeding. Guthrie's unsupported assertion that CPL Hall "could not have possibly smelled alcohol on Plaintiff" is insufficient to controvert CPL Hall's sworn declaration. Response at 18.

Accordingly, CPL Hall is entitled to qualified immunity as to the field sobriety tests and Defendants' Motion is granted.

**C. The Arrest**

"When a warrantless arrest is the subject of a § 1983 action, the officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest." *Robertson v. Las Animas County Sheriff's Dept.*, 500 F.3d 1185, 1191 (10th Cir.2007); *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Robertson*, 500 F.3d at 1191). "Probable cause to arrest exists only when the 'facts and

circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (quoting *Untied States v. Edwards,* 242 F.3d 928, 934 (10th Cir. 2001). The burden is on Guthrie to show that "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." *Martin v. City of Oklahoma City*, 180 F.Supp.3d 978, 990 (W.D. Okla. 2016) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Circuit 2012) (internal quotation omitted)).

However, "[p]robable cause does not require facts sufficient for a finding of guilt." *Valenzuela*, 365 F.3d at 896 (quoting U*nited States v. Morris,* 247 F.3d 1080, 1088 (10th Cir.2001) (internal quotation marks omitted in original). In assessing "whether probable cause to arrest exists, the [Court] evaluate[s] ... the circumstances as they would have appeared to prudent, cautious and trained police officers." *United States v. Chavez*, 660 F.3d 1215, 1224 (10th Cir. 2011) (quoting *United States v. Davis,* 197 F.3d 1048, 1051 (10th Cir.1999) (quotation omitted in original); *see also*, *Trujillo v. Rio Arriba Cty. ex rel. Rio Arriba Cty. Sheriff's Dep't*, 319 F.R.D. 571, 628 (D.N.M. 2016) ("The probable cause inquiry depends on 'facts known to the arresting officer at the time of the arrest.'") (quoting *J.H. ex rel. J.P. v. Bernalillo Cty.*, CIV 12-0128 JB/LAM, 2014 WL 3421037, at *101 (D.N.M. July 8, 2014), *aff'd, J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255 (10th Cir. 2015) (quoting *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008)).

Guthrie argues that CPL Hall lacked probable cause based on the following assertions: (1) his eyes were not bloodshot and watery; (2) the dash-cam video

demonstrates his speech was not slurred; (3) CPL Hall did not consider Guthrie's medical conditions during his administration of the sobriety tests; and, (4) there is no corroborating evidence to support CPL Hall's sworn declaration that he failed the HGN sobriety test. Response at 19-20. Examination of the uncontroverted evidence reveals that Guthrie has failed to present any evidence to support these assertions, and fails to establish CPL Hall lacked probable cause for the arrest.

CPL Hall attests in his declaration that Guthrie's eyes were bloodshot and watery. CPL Hall Declaration at ¶ 7; Motion at 2 (Material Fact No. 5). Guthrie states in his Response that his own declaration contests this fact. However, upon review of Guthrie's declaration, the Court finds no such testimony. Plaintiff fails to cite any evidence to effectively controvert CPL Hall's evidence as to his bloodshot and watery eyes. Uncontested facts are deemed admitted. *See* LCvR 56.1(e) (Stating that "material facts set forth in the statement of materials facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule.").

Next, Guthrie asserts the dash-cam video demonstrates his voice was not slurred. After reviewing the dash-cam video, the Court finds the video is not dispositive as to the nature of Guthrie's speech. Reasonable jurors could disagree upon viewing the video. However, the dash-cam video evidence, as well as CPL Hall's sworn declaration, clearly establish that CPL Hall did, in fact, consider Guthrie's medical condition and medication during the administration of the sobriety tests. CPL Hall Declaration at ¶ 15; Dash-Cam Video at 00:19:46. CPL Hall altered his course in conducting the sobriety test when

Guthrie informed him of his medical condition and ended the "walk and turn" part of the test prior to its completion. CPL Hall Declaration at ¶ 15; Dash-Cam Video at 00:19:46 – 00:19:57.

"Awareness of a disability does not, however, necessarily vitiate probable cause," it merely "'inform[s] the probable cause calculus." *Trujillo*, 319 F.R.D. at 632 (internal quotations omitted). The *Trujillo* court determined that probable cause existed for an arrest, despite the effects of a disability on specific sobriety tests, based on the "smell of alcohol, bloodshot eyes, slurred speech, [the] admission to drinking two beers, and [the] failure of the HGN test." *Id.* As in this case, "[t]here is no evidence that Trujillo's disability affected these observations, unlike the walk and turn test." *Id.* Guthrie makes no assertion that his blood pressure and vertigo affected the state of his eyes, the smell of his breath, or his failure of the one-leg stand and HGN tests.[5]

The Tenth Circuit has found probable cause even where a medical condition was determined post-arrest to be the actual cause of the arrestee's intoxication indicators. *Rife v. Oklahoma Dep't of Pub. Safety*, 854 F.3d 637, 643, 645 (10th Cir. 2017), *cert. denied sub nom. Dale v. Rife*, 138 S. Ct. 364, 199 L. Ed. 2d 273 (2017), and *cert. denied sub nom. Jefferson v. Rife*, 138 S. Ct. 364, 199 L. Ed. 2d 264 (2017). In *Rife*, the Tenth Circuit, considering all of the other tests and observations, held that an officer could reasonably conclude that the arrestee was intoxicated and that probable cause existed even though a suspect's symptoms of a medical condition mimicked those of intoxication. *Rife*, 854 F.3d

---

[5] Guthrie admits that he did not complete the one-leg stand test as directed. Guthrie Declaration at ¶ 31.

at 646. As in *Trujillo*, the sobriety tests and observed indicia of intoxication were sufficient for purposes of determining probable cause. *Id.*

Finally, Guthrie's reliance on a lack of evidence corroborating CPL Hall's sworn declaration that he failed the HGN test, is misplaced. As noted, some aspects of CPL Hall's declaration do find corroboration, such as what CPL Hall was able to observe prior to the stop, the use of the Radar devise and its indicator tones, and the administration of certain field sobriety tests. Nevertheless, Guthrie bears the burden to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. CPL Hall's declaration as to the failure of the HGN test is not effectively controverted.

The undisputed facts demonstrate that: (1) CPL Hall detected the odor of alcohol on Guthrie's breath; (2) CPL Hall observed Guthrie's eyes to be bloodshot and watery; (3) Guthrie admitted he consumed alcohol; (4) Guthrie failed at least two sobriety tests; and, (5) CPL Hall considered Guthrie's medical condition during the sobriety tests. Based on these facts alone, the Court finds that probable cause existed to arrest Guthrie for driving under the influence of alcohol. In fact, probable cause has been found based on a less robust factual record. *See Schmerber v. California*, 384 U.S. 757, 768-69, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) (finding "there was plainly probable cause" to arrest a driver who smelled of alcohol and had bloodshot watery eyes.); *Chavez*, 660 F.3d at 1224 (admission of consuming alcohol, bloodshot and watery eyes, and failed sobriety tests were sufficient to establish probable cause).

Based on the totality of the circumstances, CPL Hall had probable cause to arrest Guthrie for driving while intoxicated. Therefore, Guthrie has failed to shoulder his burden to establish that Defendant CPL Hall violated any constitutional right by initiating the traffic stop or arresting him. CPL Hall is entitled to qualified immunity.

### D. Malicious Prosecution

Guthrie bases his § 1983 malicious prosecution claim against CPL Hall on his alleged wrongful arrest. Guthrie argues that the arrest "set in motion events that [CPL Hall] knew or should have known would violate [his] rights" and, therefore, "Defendant Hall was the proximate cause of Plaintiff's rights being violated." Response at 22.

When addressing § 1983 malicious prosecution claims, the Tenth Circuit "uses the common law elements of malicious prosecution as the starting point of [the] analysis; however, the ultimate question is whether plaintiff has proven the deprivation of a constitutional right." *Shed v. Oklahoma Dep't of Human Servs.*, 729 Fed. Appx. 653, 656 (10th Cir. 2018) (quoting *Novitsky, v. City of Aurora*, 491 F.3d 1244, 1252 (10th Cir. 2007). 491 F.3d at 1257 (internal quotation marks omitted); *Pierce v. Gilchrist*, 359 F.3d 1279, 1290 (10th Cir. 2004) ("[T]he 'ultimate question' is the existence of a constitutional violation." (citing *Taylor v. Meacham,* 82 F.3d 1556, 1561 (10y Cir. 1996). The elements of a § 1983 claim are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id*. at 1258. *Shed v. Oklahoma Dep't of Human Servs.*, 729 Fed. Appx. 653, 656 (10th Cir. 2018).

As discussed above, Guthrie has failed to establish that CPL Hall deprived him of a constitutional right when he arrested Guthrie for driving while intoxicated and, therefore his claim necessarily fails. CPL Hall had probable cause to support the original arrest. While "[i]t is conceivable that a wrongful arrest could be the first step towards a malicious prosecution," there is no wrongful arrest in this case. *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996) (quoting *Reed v. City of Chicago,* 77 F.3d 1049 (7th Cir.1996)).

However, the Court notes that Guthrie also fails to establish several of the other elements of his § 1983 claim. Guthrie fails to demonstrate a causal connection between CPL Hall and the decision to initiate criminal proceedings against Guthrie. The Tenth Circuit stated in *Taylor* that "[t]he principal player in carrying out a prosecution—in 'the formal commencement of a criminal proceeding,'...—is not [the] police officer but prosecutor." *Taylor v. Meacham*, 82 F.3d 1556, 1563 n.8 (10th Cir. 1996) (quoting *Albright v. Oliver*, 510 U.S. 266, 280, 114 S. Ct. 807, 816 n. 5, 127 L. Ed. 2d 114 (1994) (Ginsburg, J., concurring)). Nor does Guthrie offer any evidence of malice. Although Guthrie asserts that CPL Hall "deliberately and maliciously made false statements" in his report, he provides no supporting evidence.

For these reasons, CPL Hall is entitled to qualified immunity on Guthrie's malicious prosecution claim.

## II.    Fourteenth Amendment Claim

Guthrie asserts a claim for violation of his right to equal protection pursuant to the Fourteenth Amendment based on CPL Hall "treating him differently from the white

passenger in Mr. Guthrie's vehicle."[6]  Complaint at ¶ 60.  Guthrie appears to base his

argument on a belief that his white passenger should have also been arrested.  Complaint

at ¶¶ 43-45; Response at 24-25.

The "Constitution prohibits selective enforcement of the law based on

considerations such as race." *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1263 (10th

Cir. 2006) (quoting *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135

L.Ed.2d 89 (1996)).  A selective enforcement claim may still arise even where there is no

Fourth Amendment violation because the constitutional basis of such claims is the Equal

Protection Clause of the Fourteenth Amendment.  *Whren*, 517 U.S. at 813.  In order to

establish a claim for selective enforcement of the law:

> A defendant "challenging alleged racial discrimination in traffic stops and
> arrests must present evidence from which a jury could reasonably infer that
> the law enforcement officials involved were motivated by a discriminatory
> purpose and their actions had a discriminatory effect." *Marshall,* 345 F.3d at
> 1168.

*United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006).  The

discriminatory purpose need not be the only purpose, but it must be a motivating factor in

the decision.  *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003)

(citing *Villanueva v. Carere,* 85 F.3d 481, 485 (10th Cir.1996)); *see also*, *Alcarez-Arellano*,

441 F.3d at 1264.  This is a demanding standard, as "judicial interference with law-

enforcement discretion 'might induce police officers to protect themselves against false

---

[6] Guthrie argues for the first time in his Response that the traffic stop was pretextual and
motivated solely by Guthrie's race.  Response at 23-24.  Because this claim is not stated in
his Complaint, it is disregarded.

accusations in ways that are counterproductive to fair and effective enforcement of the laws." *Id*. at 1264 (quoting *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1167 (2003)).

Guthrie alleges specific ways in which he and his white passenger were treated differently by CPL Hall. Response at 24-25. However, Guthrie presents no evidence at all that CPL Hall was motivated by a discriminatory purpose. Instead, Guthrie relies entirely on his own subjective belief that he was stopped and arrested because of his race. Response at 24. Although Guthrie relies on *Marshall*'s acknowledgment that "a police officer's pattern of traffic stops and arrests, his questions and statements to the person involved, and other relevant circumstances may support an inference of discriminatory purpose" in this context, Guthrie presents no such evidence. Response at 23.

Guthrie admits in his deposition testimony that CPL Hall was "as cordial as he would be with anybody," was polite, was not rude, and was not unprofessional towards him. Deposition of Otis Andre Guthrie [Doc. No. 37-4] at 143, lns 3-16. Guthrie mentions no racially derogatory comments or behavior in his deposition, declaration, or Response. Instead, Guthrie relies only on the allegedly different ways he was treated as compared to his white passenger. Reliance on different treatment alone is insufficient to meet the burden of establishing a motivating discriminatory purpose. *See Barwick v. Behnke*, 548 Fed.Appx. 516, 519 (10th Cir. 2013) (holding that an arrestee failed to show any evidence of discriminatory motive behind the officers' actions where he relied only on the fact that he was fighting with a white man who was not arrested, the police checked only his criminal history, and only one witness was interviewed).

19

To the extent Guthrie attempts to rely on statistics, his data indicates only the percentage of the City of Mustang's population that is African American. Response at 17, n.2, and 23. He provides no evidentiary support for any connection between that statistic and CPL Hall's treatment of him, instead relying on an unsupported assertion that "it is the custom and practice of Mustang to pursue people of color." Response at 23. To the extent he points to the dash-cam video as evidence of a racially motivated stop, the Court has determined that no reasonable jury could find that his race was ascertainable prior to the traffic stop.

Guthrie has failed to present any evidence from which a jury could reasonably infer that CPL Hall was motivated by a racially discriminatory intent or purpose in his treatment of him. CPL Hall is entitled to summary judgment on Guthrie's § 1983 claim for violation of the Fourteenth Amendment right to equal protection of the law.

## III.    Sixth Amendment Claim Against Mustang

Guthrie asserts that the City of Mustang's two-tier court system denied him his Sixth Amendment right to a jury trial. The undisputed facts establish that when Guthrie demanded a jury trial in the City of Mustang's municipal court, the judge dismissed the charges and they were then forwarded to the Canadian County District Court for prosecution. After this transfer, the charges were eventually dismissed without trial. Based on the fact that Guthrie was never subjected to a non-jury trial, he fails to establish his claim for violation of the Sixth Amendment right to jury trial, and Mustang is entitled to summary judgment.

Moreover, Guthrie's argument that transfer to the Canadian County District Court was improper likewise fails to carry his claim past summary judgment. Defendants correctly observe that Oklahoma employs a two-tier court system. A municipal court judge may hear cases for which the prosecution seeks "imposition of a fine of more than Two Hundred Dollars ($200.00), excluding court costs, or imprisonment, or both such fine and imprisonment" where both the defendant and the municipality waive a jury trial. Okla. Stat. tit. § 27-119(A) (2006).[7] Pursuant to Okla. Stat. tit. 11, § 27-1292(A) (2005):

> an appeal may be taken from a final judgment of the municipal court by the defendant by filing in the district court in the county where the situs of the municipal government is located, within ten (10) days from the date of the final judgment, a notice of appeal and by filing a copy of the notice with the municipal court. In case of an appeal, a trial de novo shall be had, and there shall be a right to a jury trial if the sentence imposed for the offense was a fine of more than Two Hundred Dollars ($200.00) and costs.

As noted by the Tenth Circuit, the Supreme Court "has said that such a [two-tier court] procedure affords an accused 'the absolute right to have his guilt determined by a jury composed and operating in accordance with the Constitution.'" *Id.* at 1294 (quoting *Ludwig v. Massachusetts, supra, Ludwig v. Massachusetts,* 427 U.S. 618, 625, 96 S.Ct. 2781, 2785, 49 L.Ed.2d 732 (1976)). In *M.S. News Co. v. Casado*, 721 F.2d 1281, 1293-1294 (10th Cir. 1983), the Tenth Circuit recognized there was no violation of the Sixth Amendment right to jury trial where Kansas' two-tier court system provided a defendant the right to appeal a decision by a municipal judge to the district court where the case is tried *de novo* by jury if requested. In concluding that these two-tier court systems comply

---

[7] The Court relies on the versions of the statutes in effect at the time of the events relevant to Guthrie's claims.

with the right to jury trial, the Tenth Circuit acknowledged that some compliant two-tier systems "provide a jury only in the second tier but allow an accused to by-pass the first" as is the case here. *Id*. (citing *Ludwig*, 427 U.S. at 620).

Guthrie does not respond to Defendants' argument regarding Oklahoma's two-tier court system; he simply restates that Mustang denied him a trial by jury and failed to comply with Okla. Stat. tit. 11 § 27-119 (2006). In this case, Guthrie requested a jury trial in the municipal court. The municipal court then transferred his charges to the Canadian County District Court where he would have received a trial by jury had his charges not been dismissed. In compliance with the Sixth Amendment right to trial by jury, Guthrie was allowed to by-pass the first tier of the two-tier court system in order to provide him a jury trial, as requested. Defendant Mustang is entitled to summary judgment as to Guthrie's Sixth Amendment claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 37] is **GRANTED** in its entirety, as set forth herein. Judgment will be entered in favor of Defendants.

**IT IS SO ORDERED** this 19th day of October, 2018.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE